**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE**

| | |
|---|---|
| **MAFCOTE, INC.** | **PLAINTIFF** |
| V. | NO. 3:08-CV-00011-S |
| **FEDERAL INSURANCE COMPANY** | **DEFENDANT** |

## REPORT AND RECOMMENDATION

Counsel for Federal Insurance Company asserts that Mafcote "willfully, knowingly, and intentionally falsified an interrogatory answer made under oath and in direct response to this Court's order." (*See* docket no. 41). After making such a strong assertion, counsel asks for an equally strong response from the court: the ultimate sanction of dismissal.

For the reasons stated below, the magistrate judge does not recommend dismissal at this time, but instead suggests that the district court enter an order reminding Mafcote that the court's orders are to be fully, completely, and timely followed, absent good cause, and warning Mafcote that dismissal remains a potential sanction for any other discovery errors or omissions of more than a trivial magnitude.

## I. BACKGROUND

In November 2008, a little over ten months after the commencement of this litigation, the magistrate judge conducted a telephonic status conference. *See* docket no. 21. Upon learning that there were active discovery disputes, the magistrate judge ordered the parties to file a joint status report regarding the areas of disagreement that remained unresolved. *Id.* In the parties' joint status report filed pursuant to that order, they identified a handful of discovery issues requiring the court's intervention (responses to four interrogatories and three requests for

production, and a proposed confidentiality agreement). *See* docket no. 24. In an order entered May 1, 2009, the magistrate judge issued rulings on the pending discovery disputes. *See* docket no. 29. Among them, was a ruling that directed Mafcote to supplement its answer to defendant's Interrogatory 14, which asked for information about any and all insurance claims made by Mafcote with respect to its Louisville facility, within twenty days of the date of entry of the order. *Id.*

Mafcote timely served a response on May 21, in accordance with the court's order. The response stated: "Plaintiff certifies that after conducting a diligent search no other insurance claim have [*sic*] been made from 2002 to 2007 other than those already identified." *See* docket no. 36-3. On June 2, 2009, Mafcote's corporate counsel produced some documents from his files, *see* docket nos. 34-1, 34-2 and 34-3, and on June 9, 2009, Matt Jean, one of Mafcote's executives, verified under oath the written response made on May 21, *see* docket no. 36-9. Unfortunately for Mafcote, the documents produced on June 2, and some subsequent research by defense counsel, revealed that its answer made on May 21, and verified on June 9, was incorrect.

Federal Insurance Company promptly moved for sanctions, *see* document no. 37, and also raised the inaccuracy of the response to Interrogatory 14 in its response to Mafcote's request for a protective order, *see* document no. 36. Mafcote, in attempting to explain itself, inadvertently added fuel to the fire by describing a sequence of events that defendant asserts "prove a much more serious instance of deception than originally thought," namely the submission of a "knowingly false interrogatory answer." *See* Mem. in Supp. of Def's Mot. Dismiss at 5 (docket no. 41).

Devoid of rhetoric, the sequence of events appears to be as follows. When Interrogatory 14 was first propounded in August 2008, Mafcote's counsel brought it to the attention of

-2-

Mafcote's president, Steven Schulman. Mr. Schulman then determined that he did not have enough information to answer the interrogatory completely, and delegated the task of gathering the necessary information and preparing a response to two men: Matt Jean, the Director of Supply Chain Management, and Steve Gilliland, the Chief Financial Officer. Mr. Schulman's delegation apparently was unrestricted in its scope, as he thereafter removed himself from any direct involvement with counsel in preparing an response.

Whatever work Mr. Jean and Mr. Gilliland did with respect to the first response was insufficient in defendant's eyes, and the court's. Hence the May 1 order. When that order issued, Mr. Jean was traveling on business in China, India, and Vietnam, and did not respond to counsel's requests for information regarding the response. Mr. Gilliland made some attempt to gather information relevant to the response, but the inadequacy of Mafcote's records caused him to inform Mafcote's counsel's office that he needed more time to search for additional responsive information. He did not make the request until May 21, 2009, the day the response was due, however, and Federal Insurance Company would not agree to extend the response time. Mr. Gilliland would not officially verify any response to Interrogatory 14, because he was uncertain that he had uncovered all responsive information, so Mafcote's counsel served the response at issue ("Plaintiff certifies that after conducting a diligent search no other insurance claim have [*sic*] been made from 2002 to 2007 other than those already identified.") unverified. When Mr. Jean returned to the country, he verified the response, and made no additions or revisions. It was demonstrably and unquestionably incomplete, however, as evidenced by an intermediate production of documents and publicly available information derived from other litigation pursued by Mafcote, which defense counsel reviewed.

## II. CONCLUSIONS OF LAW

Pursuant to Fed. R. Civ. P. 37(b)(2), a district court may sanction a party for failing to comply with its orders in a variety of ways, including dismissal of the lawsuit. *Bass v. Jostens, Inc.,* 71 F.3d 237, 241 (6th Cir. 1995). As a general principle, the Sixth Circuit is generally supportive of dismissal as a tool to both punish an offending party and to serve as a warning for others contemplating future misconduct. *See, e.g., Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997). Because of the harshness and finality of dismissal as a sanction, however, the Sixth Circuit is not loathe to find that a district court has abused its discretion by dismissing a case for discovery problems, unless it satisfies a four-factor evaluation. *See id.* (finding district court abused its discretion in precluding plaintiff's expert witness testimony at trial, because that sanction effectively resulted in a dismissal of plaintiff's case) (citing *Bass v. Jostens, Inc.,* 71 F.3d 237, 241 (6th Cir. 1995)).

The four factors the Sixth Circuit considers when evaluating the use of dismissal as a sanction for discovery abuses are:

1. Whether the party's failure to cooperate in discovery was due to willfulness, bad faith, or fault;

2. Whether the adversary was prejudiced by the party's failure to cooperate in discovery;

3. Whether the party was warned that failure to cooperate could lead to dismissal; and

4. Whether less drastic sanctions were first imposed or considered.

*Bass,* 71 F.3d at 241. Clearly, the third factor has not been met in this matter and, although the magistrate judge cannot speak for what the district court considered prior to referring this case, no lesser sanctions have been imposed as a first step, as the fourth factor indicates is advisable.

The first factor, so forcefully asserted by defense counsel, is the most troublesome. The magistrate judge is keenly aware of the discovery disputes and delays that formed a predicate for defendant's request, and would share in some measure of defense counsel's acute indignation if he genuinely believed Mafcote's counsel to have wilfully lied to the court – but therein lies the problem. The magistrate judge simply is not convinced that any of the discovery problems in this case are the result of calculated mendacity or wilfully contumacious conduct. Rather, they appear to be the result of practice patterns perhaps developed in courts with more a relaxed approach to discovery, or a general corporate tendency to devalue the rules or time constraints of any entity but the marketplace, or counsel's failure to effectively communicate to Mafcote's executives in a manner they could not help but hear the seriousness with which the federal courts view both discovery obligations and deadlines, or perhaps a combination of all three. That being said, there have been enough discovery dust-ups in this case thus far that, regardless of the time constraints of Mafcote's counsel, or his client's unwillingness to give the obligations attendant to filing suit the attention demanded by our federal judicial system and its rules of procedure, it is time for all concerned to start playing fully, fairly, and accurately by the rules.

This is particularly true because of the second *Bass* factor – the prejudice to defense counsel and to his client. Although defense counsel arguably veers somewhat into hyperbole in his attempt to secure dismissal, he is not utterly without justification for his assertions. Frankly, prejudice is his strongest argument. It is common in the Western District of Kentucky, in which a laudable civility largely reigns among those admitted to practice, for lawyers to trust each other's official representations as thoughtfully, thoroughly, and accurately made, so the specter of doubt cast by Mafcote's verified but inaccurate answer to Interrogatory 14 is not to be lightly dismissed. It will in fact likely lead to additional defense costs as defense counsel double-check

and second-guess Mafcote's future discovery representations.  But, there have been no substantive rulings adverse to defendant that could be traceable in whole or in part to the discovery problems, and a trial date has not yet been set, thereby leaving ample time for defendant – and the court, which is now keenly aware of Mafcote's seeming difficulties with untimeliness and inaccuracy (inadvertent or not) – to satisfy its concerns about missing documents or information.

### III. RECOMMENDATION

For the foregoing reasons, the magistrate judge recommends that the district court deny Federal Insurance Company's motion to dismiss.  Although defendant's counsel is understandably vexed, it is the magistrate judge's opinion that the Sixth Circuit would likely deem dismissal too extreme a sanction at this juncture.

DATE: February 25, 2010

**James D. Moyer**
**United States Magistrate Judge**

cc: counsel of record

### NOTICE

Within fourteen (14) days after being served a copy of these proposed findings of fact, conclusions of law, and recommendation, any party who wishes to object must file and serve written objections, or further appeal is waived.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).