UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

MAFCOTE, INC., a/k/a
MAFCOTE INDUSTRIES, INC.,                                                PLAINTIFF

v.                                         CIVIL ACTION NO. 3:08-CV-11-S

FEDERAL INSURANCE COMPANY,                               DEFENDANT

## **MEMORANDUM OPINION**

This case, which one might have expected to be a straightforward breach-of-insurance-contract action, has now been mired in discovery disputes for more than a year. After the parties could not agree on how to resolve their differences, the magistrate judge entered an order on May 1, 2009[1] requiring that plaintiff Mafcote, Inc. respond to various interrogatories and requests for documents within 20 days. May 21 evidently came and went without several of those requirements being fulfilled, and defendant Federal Insurance Company ("FIC") moved for sanctions under Fed. R. Civ. P. 37. Mafcote's brief in response to that motion revealed information that led FIC to file a second motion, this one seeking to have the case dismissed for knowing and willful discovery violations. After reviewing all the briefing that went along with those motions, the magistrate judge issued a Report and Recommendation, advising this court of his opinion that the motion to dismiss should be denied as "too extreme a sanction at this juncture." Simultaneously, the magistrate judge entered an order denying as moot the original motion for sanctions, on the ground that it was "subsumed" by the motion to dismiss. FIC filed objections to the recommendation and appealed the order.

---

[1] The order is dated April 30, but court records show that it was not filed until May 1.

In reviewing nondispositive decisions of a magistrate (such as the order denying sanctions), the district court is directed to "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). A dispositive decision (such as the recommendation to deny FIC's motion to dismiss) is reviewed de novo. Fed. R. Civ. P. 72(b)(3).

## I. Motion to Dismiss

Because dismissal would render the motion for lesser sanctions moot, we first consider FIC's motion to dismiss. It is based on FIC's Interrogatory No. 14, which sought information on any and all insurance claims filed by Mafcote arising from its Louisville facility. On May 21, 2009 (the due date for responses pursuant to the magistrate's order), Mafcote informed the defense that it had only filed three such claims, all in 2008. It subsequently certified, under oath, "that after conducting a diligent search no other insurance claim[s] have been made from 2002-2007 other than those already identified." It is now undisputed that this was false; at least two insurance claims not listed in the initial response have now come to light. Worse, it is undisputed that Mafcote knew it to be false when it submitted the verification. Two of its senior executives (Steve Gilliland and Steve Schulman) refused to certify that the initial interrogatory response was complete, because they believed that there was a possibility of other claims existing, the evidence for which they had not uncovered by the May 21 deadline. Mafcote's counsel then consulted with Matt Jean, a third senior employee, immediately upon his return from a business trip to Asia. Jean apparently did not hesitate to sign the verification, even though he did not do any research into the question himself. As it turned out, he was unaware of at least one unreported claim, and Mafcote has now admitted that Jean did know about another (though it claims that he had forgotten about it when he filed the verification).

FIC argues that the verification was knowingly and intentionally false; Mafcote insists it was merely "hastily" produced under the urgent time pressure of the magistrate's order. Both positions carry a certain amount of truth. Mafcote's counsel certainly knew of at least a possibility of additional claims when he procured the verification—that possibility was the basis for Gilliland's and Schulman's refusals to sign. Jean had actual knowledge (though it had slipped his mind) of at least one claim not included in the answer. It is also true that the magistrate's order gave Mafcote a lot to do and not much time in which to do it, but then again, Mafcote had several months to begin preparation of its responses before the order was entered. Moreover, counsel for Mafcote does not appear to have tried all that hard to provide a timely response. He gets off on the wrong foot by attempting to excuse himself on the basis that the order was entered on Oaks Day 2009, and that he did not get around to reading it until three days later. But while the court is sure that the magistrate did not intend to ruin counsel's Derby weekend, we are just as certain that an attorney's professional obligations to his client trump his social obligations.

In FIC's view, Mafcote's failings in response to Interrogatory 14 warrant dismissal of the case under Fed. R. Civ. P. 37(b)(2)(A). The Sixth Circuit considers four factors when evaluating dismissal as a discovery sanction: (1) evidence of willfulness or bad faith; (2) prejudice to the adversary as a result of the failure to cooperate in discovery; (3) whether the violating party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions have already been imposed or ordered. *Phillips v. Cohen*, 400 F.3d 388, 402 (6th Cir. 2005) (*citing Bass v. Jostens, Inc.*, 71 F.3d 237, 241 (6th Cir. 1995)). As the magistrate held in his report, the third and fourth factors are basically absent here. True, FIC warned Mafcote at various times that it would seek sanctions (which could include dismissal), but such a threat from an adverse party hardly

carries the same weight as the admonishment of a court. And while FIC had sought lesser sanctions before moving for dismissal, its dismissal motion was based on the same conduct as the prior motion. The point of the fourth factor is to render dismissal more likely when a party engages in new abuses after it has already been sanctioned. Clearly that did not happen here.

We are also in agreement with the magistrate that the discovery problems in this case are not "the result of calculated mendacity or willfully contumacious conduct." Counsel seems to have been hurried, unprepared, and perhaps negligent, but he does not appear to have deliberately procured false answers. Similarly, Matt Jean's willingness to verify the answer looks more like an error of (arguably extreme) inadvertence rather than a deliberate attempt to mislead FIC or the court.

The second factor is probably FIC's strongest argument, but it is not enough to carry the day here. FIC's position is that it has been and will continue to be prejudiced by Mafcote's discovery practices, because it will be forced to expend time and resources double-checking Mafcote's submissions to ensure that they are complete and accurate, rather than being able to rely on its adversary's candor. This carries some substantial weight, but it is a problem that can be remedied by a less drastic solution than outright dismissal: the court hereby explicitly warns Mafcote (and its counsel) that any future false or incomplete responses to discovery requests will result in dismissal of the case. With that warning, FIC ought to be able to trust Mafcote's future responses; if it does not, and at some point discovers an error or falsehood, it will be able to renew its motion to dismiss with a strong chance of success. At this point, however, we are in agreement with the magistrate that dismissal is premature, and we will therefore accept his recommendation in this respect.

## II. Lesser Sanctions

Having concluded that the case will not be dismissed, we proceed to consider FIC's initial motion for sanctions. We first hold, in agreement with the defense, that the magistrate's denial of that motion was contrary to law. FIC sought sanctions for failure to respond to four discovery requests within the time limit set by the magistrate's order. Its motion for dismissal was grounded only in one of those (discussed above). Moreover, a litigant must make a more forceful showing to have a case dismissed than is required for lesser sanctions. The possibility of lesser sanctions was not foreclosed by FIC's decision to seek dismissal, and we proceed to consider whether any of the requests for such sanctions were justified.

Rule 37(b)(2) empowers the district court to impose sanctions for failure to comply with a discovery order. Though it outlines a number of available sanctions, this rule does not limit the court to a few menu options; the court has authority to "issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). The primary relief requested here is in essence an order enforcing the terms of the magistrate's original discovery order: FIC asks that we order Mafcote to produce all documents relating to the occurrences in the complaint and to *Brown v. Royal Consumer Products Group*, No. 3:06-CV-419-S, a case involving a Mafcote subsidiary and one of its former employees. It also asks that we require Mafcote to turn over documents allegedly protected by the attorney-client privilege and the work-product rule, on the ground that the privilege logs it submitted in response to the magistrate's order were late and/or insufficient. On top of those orders, FIC requests an award of the costs and expenses incurred as a result of Mafcote's non-compliance with the initial order.

## A. Interrogatory No. 14

As discussed above, Mafcote's responses to Interrogatory No. 14 have been incomplete, and its sworn verification was false. The record does not reflect any correction of these problems, even though they have been repeatedly brought to the plaintiff's attention. We will order Mafcote to submit a complete and certified answer to this interrogatory within twenty-one days of this opinion, under penalty of dismissal.

## B. Non-Privileged *Brown* Documents

FIC's Request for Production No. 10 sought access to all non-privileged documents relating to *Brown*. The magistrate overruled the plaintiff's objections to this request for production, and ordered that Mafcote "shall produce all non-privileged documents responsive to this request for production and a privilege log for any document it contends is privileged within 20 days of the entry of this Order. Failure to produce a privilege log will result in the waiver of the privilege" (emphasis omitted). Mafcote did not appeal this order, and it is undisputed that it failed to meet the deadline. It eventually produced three discs of documents related to the *Brown* case on June 2, 2009—more than a week late. These discs evidently did not contain Sara Brown's medical file, personnel file, or deposition transcript from the prior action. Mafcote's position is that it "tried to provide a timely response" (Resp. to Mot. for Sanctions 2), but that it was thwarted by its obligations under a confidentiality agreement in the *Brown* case and the large number of pages the magistrate's order obligated it to provide. These arguments are unavailing.

To begin, Mafcote's counsel waited several days to read the magistrate's order, and two weeks (until May 14) to move for an extension of time. That motion went unaddressed—owing, we suspect, to the short one-week turnaround time counsel allowed the court. A prudent attorney would

probably operate under the assumption that such a motion would be denied until learning that it had been granted, but Mafcote's counsel took the opposite tack by filing nothing relating to the *Brown* case until after his own proposed June 1 deadline had passed.

Mafcote points out that it spent $1,811.10 scanning and labeling the documents it was ordered to produce, but it offers no sound justification for refusing to provide those documents before its invoice (which it provided on May 21) was paid. The magistrate's order unambiguously set a date certain for production, which was not contingent on prepayment of costs. Plaintiff offers only an admission that its demand for prepayment (and consquent refusal to timely provide some of the documents) was motivated by opposing counsel's demand that it provide thousands of pages of documents that were apparently publicly available. Spite, however, is not a sound reason for ignoring a court order. One would like to think that fact so obvious as not to require mentioning.

FIC's main complaint here is the three documents that have evidently yet to be produced in any form, which Mafcote claims to be covered by a confidentiality agreement. But the confidentiality agreement in *Brown* evidently specifically permits production to third parties where commanded by court order, so it has no bearing on the circumstances with which we are confronted. (*See* Reply in Support of Rule 37 Sanctions 2.) Further, the parties here had reached (though not executed) their own confidentiality agreement, which the magistrate's order approved with revisions. Sara Brown has not intervened in this case to protect her own privacy, and Mafcote never argued—either before the magistrate's order or in an appeal afterwards—that it is legally prohibited from producing the documents he required it to produce. "It is well settled that a concern for protecting confidentiality does not equate to privilege, and that information and documents are not shielded from discovery on the sole basis that the they are confidential." *Sonnino v. Univ. of Kan.*

*Hosp. Auth.*, 220 F.R.D. 633, 642, 2004 U.S. Dist. LEXIS 5707 (D. Kan. 2004) (*citing*, *e.g.*, *Federal Open Mkt. Comm. v. Merrill*, 443 U.S. 340, 362 (1979) ("There is no absolute privilege for trade secrets and similar confidential information . . . .")).

Mafcote has provided no legally sufficient excuse or justification for failing to provide all of the *Brown*-related documents in accordance with the magistrate's order, and no reason for the court not to order them to be produced forthwith. Consequently we will enter an order to that effect.

### C. Privilege Logs

Mafcote has also withheld a number of documents (relating to *Brown* and in response to Interrogatory No. 13 and Request No. 11) on the ground that they are subject to the attorney-client privilege or the work-product rule. In FIC's view, these privileges were waived by Mafcote's failure to provide a sufficiently detailed log of its claims of privilege by the magistrate's deadline. The order explicitly and repeatedly stated that "[f]ailure to produce a privilege log will result in waiver of the privilege," and made clear that the logs were to be "as contemplated by the Federal Rules." That latter statement was in reference to Fed. R.Civ. P. 26(b)(5), which requires that privilege logs contain sufficient information to "enable other parties to assess the claim" of privilege. The attorney-client privilege requires proof of eight elements: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived." *Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998) (*citing Fausek v. White*, 965 F.2d 126, 129 (6th Cir. 1992)). Work-product protection is available for documents like those the plaintiff seeks to protect here if they were "prepared in anticipation of litigation or for trial by or for another party or its

representative." Fed. R. Civ. P. 26(b)(3)(A). For obvious reasons the burden of proof falls on the party seeking to invoke a privilege's protection. *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997). In order to meet the requirements of the Federal Rules and justify a claim of privilege, therefore, a privilege log must contain sufficient factual content to allow the court to reach the conclusion that each element of that privilege is fulfilled.

Mafcote's privilege logs (which were submitted late as to the *Brown* documents) identify only the dates of the documents, a brief description providing no substantive information (e.g. "E-mail correspondence with Mark W. Dobbins and Matt Jean"), and the asserted privilege. Plaintiff's counsel makes no effort whatsoever to argue that the logs he submitted actually meet Rule 26's requirements. His only defense is that the Sixth Circuit has not yet provided definitive guidance, but the federal reporters teem with cases providing an idea of what is likely required here. Other courts, in this circuit and elsewhere, have set out the following elements to be identified in the privilege log:

(a) The author(s) and all recipients (designated so as to be clear who is the sender and who the receiver), along with their capacities/roles/positions.

(b) The document's date.

(c) The purpose and subject matter of the document.

(d) The nature of the privileged asserted, and why the particular document is believed to be privileged.

*See*, *e.g.*, *Brubaker v. Encompass Prop. & Cas. Co.*, 2008 U.S. Dist. LEXIS 40133, at *2 ( E.D. Mich. May 19, 2008); *Jones v. Hamilton County Sheriff's Dep't*, 2003 U.S. Dist. LEXIS 10100 (S.D. Ind. June 12, 2003); *Allen v. Chicago Transit Auth.*, 198 F.R.D. 495, 498 n.1 (N.D. Ill. 2001); *Allendale Mut. Ins. Co. v. Bull Data Sys.*, 145 F.R.D. 84, 88 (N.D. Ill. 1992); *Smith v. Logansport Cmty. Sch. Corp.*, 139 F.R.D. 637, 648-49 (N.D. Ind. 1991). Plaintiff's counsel does not appear to

have attempted to locate any such guidance on his own, preferring to wait for this court to opine before providing any details. Notwithstanding this lack of effort, we do not think that imposing a sanction of waiver is justified at this time given counsel's apparently good-faith (if poorly executed) attempt to comply with the magistrate's order on short notice. Instead, the court is of opinion that the better remedy is to order Mafcote to revise and expand its privilege logs in order to meet the requirements set forth above. Given the brief lists of privileged documents that plaintiff has thus far provided, we do not think this too burdensome a task. If however it is not complete within the time limit we prescribe (twenty-one days), plaintiff's counsel is warned that the asserted privileges will be considered waived, and the documents will be ordered produced, once and for all.

### D. Costs and Attorney's Fees

Rule 37(b)(2)(C) provides: "Instead of or in addition to [other sanctions], the court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure [to comply with a court order], unless the failure was substantially justified or other circumstances make an award of expenses unjust" (emphasis added). The rule vests the court with little discretion. Its language is mandatory in the event of failure to comply, unless there is a showing of justification or other extenuating circumstances. It is the opinion of this court that neither has been shown here. Lack of time is not, in the court's view, a compelling justification in light of counsel's delay in reading the order and failure to move quickly to obtain an extension of time. Nor, for the reasons explained above, do his problems with obtaining a confidentiality agreement suffice to justify the failure to produce the *Brown* documents. Finally, a brief survey of the law of Rule 26 should have made clear to the plaintiff that the bare-bones

privilege log it initially submitted was inadequate. FIC should not have been forced to file a new motion to obtain a log meeting the standards of the Federal Rules.

Because we find Mafcote's failures to be unjustified, we will award FIC its costs and attorney's fees expended in seeking to enforce the magistrate's order. Further, because we think that Mafcote's failures were due in some substantial part to its attorney's lack of diligence, we will hold Mafcote and its counsel jointly and severally liable for those fees, as authorized by Rule 37(b)(2)(C). We hasten to note, however, that this award of fees and costs is limited to those incurred in preparing and filing the initial motion for sanctions (including reviewing the response brief and preparing the reply). The motion to dismiss, as explained above, was premature at best, and we will not award fees for filing a failed motion.

* * *

For the reasons set forth above, the court will adopt the magistrate's recommendation with respect to the motion to dismiss, but will vacate its order denying sanctions. That order will be replaced with the terms of the separate order issued herewith.