UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

MAFCOTE, INC., a/k/a MAFCOTE INDUSTRIES, INC.     PLAINTIFF

v.                                                CIVIL ACTION NO. 3:08-CV-00011

FEDERAL INSURANCE COMPANY                         DEFENDANT

## MEMORANDUM OPINION

This matter is before the court on several motions by both parties, all stemming from discovery disputes between plaintiff Mafcote, Inc. ("Mafcote") and defendant Federal Insurance Company ("Federal"). For the reasons set forth herein, Mafcote's motion for reconsideration of our May 12, 2010 order (DN 70) will be **DENIED**; Mafcote's motion to file medical records under seal (DN 83) will be **DENIED** as moot; Mafcote's objections to Federal's bill of attorney's fees, costs, and litigation expenses will be **GRANTED** in part and **OVERRULED** in part; and Federal's motion to dismiss for discovery violations will be **GRANTED**.

### BACKGROUND

Mafcote, a paper products manufacturer, filed this action in December 2007 claiming that Federal, one of Mafcote's insurers, breached the insurance contract between the two. The basis for Mafcote's action is that Federal failed to pay the full amount of one of Mafcote's claims for employee theft, allegedly in violation of the contract's terms. This case – simple enough on its face – has been mired in discovery disputes for more than a year now.

We provided a summary of the genesis of these disputes in a memorandum opinion dated May 12, 2010:

> After the parties could not agree on how to resolve their [discovery-related] differences, the magistrate judge entered an order on May 1, 2009 requiring that plaintiff Mafcote, Inc., respond to various interrogatories and requests for documents within 20 days. May 21 evidently came and went without several of those requirements being fulfilled, and defendant Federal Insurance Company . . . moved for sanctions under Fed. R. Civ. P. 37. Mafcote's brief in response to that motion revealed information that led FIC to file a second motion, this one seeking to have the case dismissed for knowing and willful discovery violations. After reviewing all the briefing that went along with those motions, the magistrate judge issued a Report and Recommendation, advising this court of his opinion that the motion to dismiss should be denied as "too extreme a sanction at this juncture." Simultaneously, the magistrate judge entered an order denying as moot the original motion for sanctions, on the ground that it was "subsumed" by the motion to dismiss. FIC filed objections to the recommendation and appealed the order.
>
> Memorandum Opinion of May 12, 2010 (DN 65) at 1.

On review, we accepted the magistrate judge's recommendation that the case not be dismissed, but vacated the portion of the Report and Recommendation pertaining to lesser sanctions. We agreed that dismissal was not an appropriate remedy at the time, owing mainly to the fact that Mafcote had not received a previous warning or lesser sanctions. We took the opportunity to explicitly warn Mafcote that any future false or incomplete discovery responses could result in dismissal.

We also imposed financial sanctions, disagreeing with the magistrate judge that the motion to dismiss had subsumed the motion for lesser sanctions. We found that Mafcote violated the magistrate judge's discovery order by submitting incomplete and falsely verified responses to one of Federal's interrogatories (Interrogatory No. 14); by failing to provide to Federal a complete set of documents from *Brown v. Royal Consumer Products*, a case involving a Mafcote subsidiary; and by failing to provide complete and sufficient privilege logs for several *Brown* documents and for Mafcote's responses to Interrogatory No. 13 and Request For Production No.

11. We issued an order in accordance with this opinion giving Mafcote twenty-one days to remedy the defects in its discovery and awarding Federal costs and attorneys' fees accrued in the course of preparing its initial motion for sanctions (DN 37).

This order did not end the discovery controversy. On or around June 2, 2010, Mafcote delivered three sets of documents to Federal's counsel's office: a Third Supplemental Answer to Federal's Interrogatory No. 14; a Third Supplemental Response to Federal's requests for production, which included *Brown* documents Mafcote had omitted from its earlier response; and privilege logs for the *Brown* file from 2006, 2007, 2008, and 2009. These responses were purportedly in compliance with this court's May 12 order. Federal, however, has now filed a second motion to dismiss (DN 74), arguing that Mafcote's discovery responses were made in willful noncompliance with this court's order. For its part, Mafcote has moved this court to reconsider our May 12 order (DN 70) and has moved to file documents in connection with that motion under seal (DN 83). It has also objected to the bill of costs submitted by Federal in response to our imposition of sanctions (DN 69).

## ANALYSIS

**I. Mafcote's Motion For Reconsideration**

We first address Mafcote's motion for reconsideration of our May 12, 2010 opinion and order. Reconsideration is an extraordinary remedy and is granted only sparingly. *Gesler v. Ford Motor Co.*, 185 F. Supp. 2d 724, 729 (W.D. Ky. 2001). Traditionally, courts will grant a motion for reconsideration when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice. *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 Fed. App'x 949, 959 (6th Cir. 2004) (unpublished) (citing

*Reich v. Hall Holding Co.*, 990 F. Supp. 955, 965 (N.D. Ohio 1998)). "The court, in order to promote finality of decisions and judgments, should not consider such a motion when the moving party merely disagrees with the court's decision and attempt to reorganize and refocus its previous evidence and legal analysis." *Gesler*, 185 F. Supp. 2d at 724 (citing *Plakson Elec. Mats. v. Allied-Signal*, 904 F. Supp. 644, 669 (N.D. Ohio 1995).

Here, Mafcote does not argue that there has been an intervening change of controlling law or that new evidence has come to light, nor does it argue that this court committed clear error in our previous decision. Therefore, the only possible ground upon which we might grant Mafcote's motion is that of preventing manifest injustice. As we will explain, Mafcote fails to meet this standard.

In its brief, Mafcote identifies several allegedly salient points that it asks this court to keep in mind as we reconsider our May 12 order. First, Mafcote appears to argue that its violation of the Magistrate Judge's order was somehow excused because it believed time was not of the essence with respect to the *Brown* documents. Mafcote points to an incident in December 2008 in which the parties discussed the issue of Mafcote preparing a privilege log for the *Brown* documents, but Federal ultimately submitted the issue to the magistrate judge for resolution. Mafcote claims that because Federal did not capitulate to its demands with respect to the privilege log and instead brought the issue to the attention of the court, Federal gave the appearance of having no immediate need for the *Brown* documents, thus apparently excusing Mafcote's failure to comply. However, Mafcote's subjective beliefs as to the propriety, urgency, or relevance of Federal's request for production do not give it license to disobey a court order. Its argument does not support reconsideration.

Second, Mafcote argues that it believes the case had been effectively stayed pending service on two third-party defendants. It points to some statements by the court that may have given rise to this belief; however, as Mafcote acknowledges, the actual scheduling deadlines with respect to discovery were never changed. Thus, Mafcote's obligations – of which it had ample notice – remained the same. Again, Mafcote's subjective belief about the status of the case does not excuse its failure to comply with clear, court-ordered deadlines. Similarly, Mafcote's claim of "surprise" that the court did not grant its motion for an extension of time to produce the *Brown* documents does not excuse its failure. As we noted in our earlier opinion, a prudent lawyer filing such a motion would have proceeded under the assumption that he was obligated – as Mafcote's counsel was – to comply with the earlier deadline absent explicit permission from the court.

Mafcote further attempts to explain away its conduct by arguing that the *Brown* case was on the verge of settlement in May 2009 and that it did not want to "upset" the plaintiff, Sara Brown, by providing the items missing from her case file to Federal. Mafcote argues that Ms. Brown's mental state was somewhat fragile, and implies that the slightest disturbance could have derailed the settlement process. Although Mafcote's concern for Ms. Brown's mental well-being and its eye toward the efficient settlement of cases are admirable, neither of these justifications excuses its failure to comply with the magistrate judge's order.

Finally, Mafcote tries to shift some of the blame for its conduct onto Federal, arguing that if Federal had been willing to compromise or discuss the form and substance of the *Brown* privilege logs, then Mafcote's response might have been timely. Mafcote also points out that Federal has yet to pay the costs Mafcote incurred in copying the previously produced *Brown*

documents. However, Mafcote had an independent obligation to comply with the magistrate judge's order regardless of Federal's behavior, and its argument here is unconvincing.

Mafcote was responsible for producing documents and a complete privilege log in accordance with the magistrate judge's order. It did not do so, and is therefore properly liable for sanctions. Its motion for reconsideration either recycles arguments that it has already made or makes points that it could have – but did not – raise at an earlier time. As noted above, a litigant's mere disagreement with a court's decision does not provide grounds for reconsideration. We will deny Mafcote's motion for reconsideration and our May 12, 2010 opinion and order will stand as written.

**II. Mafcote's Motion to File Medical Records Under Seal**

We next address a motion related to Mafcote's motion to reconsider. In conjunction with its reply in support of its motion for reconsideration, Mafcote moved to file a set of the *Brown* plaintiff's medical records – offered as an exhibit to its reply brief – under seal. Federal opposes this motion, characterizing it as a "ruse" designed to bolster Mafcote's arguments in favor of reconsideration and noting that many of Ms. Brown's psychological records are already available as part of the public record in the *Brown* case.

Mafcote offers the medical records in question to support its assertion that Federal should have shown "deference to the anxieties of a woman with emotional difficulties documented in medical records" in demanding the *Brown* documents. Pl.'s Reply in Support of Motion for Reconsideration at 8. As we explained earlier, however, the risk of upsetting the plaintiff in the *Brown* case does not provide Mafcote with a reasonable justification for disobeying a court order. Ms. Brown's mental state and her mental health records are utterly irrelevant to the disposition of

Mafcote's motion. Sealed or not, they have no bearing on our decision. Therefore, Mafcote's motion to file the records under seal will be denied as moot and the exhibits (Exhibit "A" to Defendant's Reply in Support of Its Motion to Reconsider) will be stricken from the record.

**III. Federal's Bill of Fees, Costs, and Expenses and Mafcote's Objections**

We next address Federal's itemized bill of attorney's fees, costs, and litigation expenses, which was submitted in accordance with our May 12, 2010 opinion and order sanctioning Mafcote. Our order stated that Federal was entitled to "costs and attorney's fees accrued in seeking to enforce the magistrate's initial discovery order through its initial motion for sanctions (DN 37), including expenses related to reviewing the plaintiff's response and preparing its reply."

An award of attorneys' fees must be "reasonable and not excessive. Such an award should only take account of work actually performed, and fees actually incurred." *Graceland Fruit v. KIC Chems., Inc.*, 320 Fed. App'x 323, 328 (6th Cir. 2008). The starting place for calculating an award of attorneys' fees is multiplying the number of hours reasonably expended by a reasonable hourly rate. *Id.* (citing *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763–64 (2d Cir.1998)) (quotations omitted).

Federal claims it incurred $14,027.00 in fees preparing its initial motion for sanctions. Federal's itemized bill consists of accounting of time two of its attorneys spent working on the motion for sanctions – a total of 67.30 hours. An affidavit accompanying the bill notes that one attorney typically charges $450 per hour, while the other charges $250 per hour. However, the affidavit states that Federal was charged $235 and $200 per hour, respectively. Defendant's Bill of Attorney's Fees, Costs, and Expenses (DN 67), Decl. of John O. Sheller, ¶¶ 3, 5. Federal does not claim any costs other than the attorneys' fees.

Mafcote first objects to Federal's bill on the grounds that Federal included time in its billing entries for working on its response to Mafcote's motion for a protective order, a separate pleading that was filed at the same time as Federal's motion for sanctions. Federal claims that these entries were properly included because the initial motion for sanctions incorporated by reference the statement of facts from its response to Mafcote's protective order motion. Mafcote argues that Federal would have drafted the statement of facts regardless of whether it decided to file a motion for sanctions, and that Federal should not be allowed to "double dip."

We agree that some of the entries related to the protective order should be stricken altogether, while others should be reduced. Federal's time log includes three entries that reference only work on the response to the motion for a protective order:

> 06/05/09 Revise and edit Response to Plaintiff's Motion for Protective Order. JOS – 0.50
>
> 06/08/09 Drafted response to Plaintiff's motion for protective order. JAC – 5.50
>
> 06/08/09 Revise and edit Defendant's Response to Plaintiff's Motion for Protective Order. JOS – 1.20

These entries clearly do not represent time expended on the motion for sanctions; thus, they should be removed from the bill of costs.

Six other entries reference both the motion for sanctions and the response to Mafcote's motion for a protective order:

> 06/04/09 Review and analyze arguments to be addressed in Motion to Compel Discovery[1] and Response to Motion for Protective Order. JOS – 0.20
>
> 06/05/09 Drafted statement of facts for use with response to motion for protective order, motion for sanctions. JAC – 5.10

---

[1] Federal's counsel asserts in an affidavit accompanying the bill that he inadvertently referred to the motion for sanctions as a motion to compel when making his time entries.

> 06/09/09 Studied, analyzed documents produced by Mafcote for use with discovery motions. JAC – 0.60
>
> 06/09/09 Revise and edit Response to Plaintiff's Motion for Protective Order and Defendant's Motion to Compel Discovery. JOS – 1.30
>
> 06/10/09 Revise and edit Motion to Compel Discovery by Plaintiff and Response to Motion for Protective Order by Plaintiff. JOS – 1.50
>
> 06/28/09 Began drafting possible response to Mafcote's reply in support of its motion for protective order/response in opposition to Federal's motion for sanctions. JAC – 0.40

The entries above show time expended in the preparation of two separate motions. Although the statement of facts may have been shared between them, the two pleadings nonetheless contain different substantive legal arguments, and our order called only for Federal to be compensated for the time spent on the motion for sanctions. Given that Federal characterizes its response to Mafcote's motion for a protective order as a "mirror image" of its motion for sanctions, and given that the two pleadings appear to be similar in length and complexity, it seems fair – absent any other information about the time spent on each motion – to award Federal sanctions for half the hours it claims on time entries that reference both the response to the protective order motion and the motion for sanctions. Those entries will be reduced accordingly.

Second, Mafcote objects to the total number of hours Federal billed. Mafcote specifically points to the fact that while Federal spent more than 67 hours on its motion, Mafcote spent less than 33.4 hours drafting its response.[2] In support of its argument, Mafcote cites to an unpublished Sixth Circuit opinion which upheld a magistrate judge's decision to reduce a

---

[2] Mafcote asserts that it cannot determine with certainty exactly how much time it spent actually *drafting* the motion because its entries with respect to the motion also include tasks such as emails and telephone calls related to the motion.

prevailing attorney's hours based in part on a 205-hour discrepancy between the amount each party had billed. *See Grubb & Ellis/Centennial, Inc. v. Gaedeke Holdings, Ltd.*, 218 Fed App'x 390, 401 (6th Cir. 2007) (unpublished). However, no such unreasonable discrepancy is present here. As the party on the offensive, Federal was charged with producing the initial brief and then reviewing and replying to Mafcote's response. It makes sense that Federal spent more time on the motion for sanctions than Mafcote did because Federal simply had more work to do. Other than its statement that it spent much less time working with the motion than Federal did, Mafcote offers nothing to show that the time Federal's attorneys expended was unreasonable.

In a similar vein, Mafcote also alleges that the time billed between the two attorneys was excessive and duplicative. However, it fails to cite any specific time entries that indicate undue duplication of efforts between the two attorneys, and nothing in the record indicates that it took place. Mafctoe's objection to the overall number of hours will be overruled.

Third, Mafcote claims that two billing entries are too vague and should therefore be stricken. The entries it cites read as follows:

> 6/9/09 Studied, analyzed documents produced by Mafcote for use with discovery motions. JAC – .60
>
> 6/10/09 Review and analyze various exhibits and attachments to be used with discovery motion. JOS – 1.60

"[D]ocumentation offered in support of hours charged [in a fee petition] must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 n.2 (6th Cir. 1984). Federal

asserts – and we agree – that the temporal context in which these entries were made make it sufficiently clear that it was working on its motion for sanctions and its response to the protective order motion.

Mafcote also argues that because Federal's motion for sanctions was only partially successful, it is only entitled to a partial award of attorney's fees. It is true that "the degree of success obtained" is "the most critical factor in determining the reasonableness of an attorney's fees award." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). However, this a court may not employ "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon." *Id.* at 435 n.11. Here, although Federal did not receive *all* relief it requested – namely, waiver of privilege with respect to some documents referenced in the privilege logs – it nonetheless prevailed on its motion to have Mafcote sanctioned. That this court attempted to fashion a remedy that was no more harsh than necessary should not affect the assessment of Federal's success. Federal's fees should not be reduced on this ground.

We will thus grant in part and overrule in part Mafcote's objections to Federal's bill of costs. The billing entries referencing only work done on the response to Mafcote's motion for a protective order will be stricken, and time entries referencing both motions will be reduced by half.[3]

---

[3]Federal's original bill of costs requests sanctions in the amount of $14,027.00, reflecting 51.1 hours expended by attorney Jeffrey A. Calabrese at a rate of $200 per hour, and 16.2 hours expended by attorney John O. Sheller at a rate of $235 per hour. We will strike in their entirety two time entries totaling 1.7 hours from Mr. Sheller, and one entry for 5.5 hours from Mr. Calabrese. We will also reduce by half three entries totaling three hours from Mr. Sheller (a reduction of 1.5 hours) and three entries totaling 6.1 hours from Mr. Calabrese (a reduction of 3.05 hours). All told, Mr. Sheller's hours in the bill of costs will be reduced by 3.2, for a total reduction of $752, and Mr. Calabrese's hours will be reduced by 8.55 hours, for a total reduction of $1710. Thus, Mafcote will be liable for $11,565 in sanctions based on our May 12, 2010 order.

**IV. Federal's Motion to Dismiss for Discovery Violations**

Finally, we address Federal's second motion to dismiss for Mafcote's alleged discovery violations. Federal Rule of Civil Procedure 37 grants a district court the discretion to dismiss an action, in whole or in part, for violation of a discovery order. FED. R. CIV. P. 37(b)(2)(A)(v). Federal claims that Mafcote has continued its previous pattern of recalcitrance with respect to discovery, and has violated this court's May 12 order in three ways: (1) by failing to provide a complete, usable, and properly verified answer to Interrogatory No. 14; (2) by failing to provide the settlement agreement and other settlement-related documents from the *Brown* case; (3) by failing to provide sufficiently detailed privilege logs for several sets of documents.

Federal first takes issue with Mafcote's Third Supplemental Answer to Interrogatory No. 14. This Interrogatory asked Mafcote to

> [i]dentify any and all insurance claims of any sort made by Plaintiff from 2000 to 2008[4] arising out of its Louisville, Kentucky facility, including, but not limited to, date of claim, claim number, insurer, type of insurance policy, the facts supporting the claim, the amount Plaintiff initially claimed under the policy, the amount Plaintiff was actually paid under the policy, and, if the amount Plaintiff was actually paid under the policy was less than that initially claimed by Plaintiff, the insurer's stated grounds for doing so.

Mafcote's Third Supplemental Answer to this Interrogatory, made in response to our May 12 order, consists of a narrative description of a handful of insurance claims and two sets of data from Mafcote's brokers that provide little, if any, of the information Federal seeks.[5] It is in

---

[4]An order entered by the magistrate judge on May 1, 2009 limited the scope of this Interrogatory to claims made between 2002 and 2007.

[5]The data appears to have been cut and pasted from tables apparently provided by Mafcote's insurance brokers. A sample entry from the first data set, for instance, reads "0046240" (the applicable policy number) / C A 2110 CARGO-OCEN (the type of claim filed) / 2343 CHUBBCARGO (the insurer) / 1/04/03  3/10/03 (the policy term). A sample entry from the second

continue...

this answer that Mafcote asserts, for the first time in any of its responses to this Interrogatory, that it does not keep records of insurance claims and that this was the best information it could compile from its insurance brokers. Federal argues that Mafcote's response is unusable and incomprehensible.

We agree with Federal's assessment of the quality of this information. However, if, as Mafcote asserts, this information was the best it could provide, then we cannot fault it for being unable to respond in full to Federal's request. Although Mafcote's previous failure to explain that it does not keep records of such claims is somewhat troubling, it cannot be sanctioned for failing to provide information it simply does not have and has tried, but failed, to acquire. *See Societe Internationale Pour Participations Industrielles Et Commerciales v. Rogers*, 357 U.S. 197, 212 (1958). *See also Judy v. Pingue*, No. 2:08-CV-859, 2009 U.S. Dist. LEXIS 70560 at *2 (S.D. Ohio Jul. 27, 2009) ("The Court cannot compel [a party] to produce what does not exist.").

Federal also takes issue with the manner in which Mafcote verified its Third Supplemental Response, claiming that the answer was certified only "as to its apparent completeness, but not its accuracy." The verification reads:

> The Plaintiff certifies that after a diligent search no other claims made relating to the Louisville facility were made from 2002-2007 that can be identified.

The verification is signed by Mafcote's president. Federal claims that this answer does not satisfy Fed. R. Civ. P. 33(b)(3), which provides that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and in writing under oath." We find Federal's argument here unconvincing. Even if this verification does not contain an explicit certification that the

---

⁵...continue
set, which does not contain the category labels of the first set, reads, from left to right "031WE TK1586 YKVC85707   WORK COMP WILLIAM SARVER    5/14/07 – 5/14/08."

answer was made under oath or that it is accurate as opposed to simply complete, we are reluctant to find a sanctionable discovery violation – especially one that would warrant dismissal – based on a technical detail.[6]

Second, Federal asserts that Mafcote improperly withheld settlement documents from the *Brown* case. Our order required Mafcote to provide within 21 days "copies of all non-privileged documents (including "confidential" documents, subject to the parties' confidentiality agreement) pertaining to the [*Brown* case]." In response to this order, Mafcote provided a set of discovery materials that included several previously disputed and un-produced items, but it did not include the settlement agreement or other settlement-related documents from the *Brown* case, which settled in June 2009. Federal had specifically requested the settlement agreement in August 2009, at which time Mafcote's counsel stated that he would not provide it absent a court order. Federal's Second Motion for Sanctions (DN 74), Ex. F. Apparently, this court's May 12 order did not convince Mafcote to provide the settlement agreement or settlement-related documents. Mafcote has, however, now included the settlement agreement with its Response to Federal's motion.

Mafctoe's decision to withhold the settlement agreement until Federal moved for sanctions was a clear violation of this court's order. Mafcote attempts to justify its conduct by claiming that Federal acted in bad faith for asking for the settlement agreement and never paid

---

[6]Federal also argues that because Mafcote's response to the Interrogatory references an insurance claim that Mafcote's president stated in an affidavit he would not have supplied in response to the Interrogatory. Federal argues that Mafcote's latest response, which "deviates from prior sworn testimony," shows that Mafcote's current answers are unreliable. This argument is also unconvincing. Federal fails to show how providing additional information on past claims somehow undermines the credibility of Mafcote's answer, and it certainly does not show how this would amount to a discovery violation.

for previous copies of *Brown* documents, and also points to what it characterizes as Federal's obstinance with respect to Mafcote's discovery requests. However, it is not Federal's conduct that is at issue here, and our order was not contingent on Federal's paying outstanding invoices or behaving a certain way with respect to Mafcote's discovery requests. Our order was unequivocal, and Mafcote has not claimed that its failure to follow it was due to any inability or inadvertence on its part.

Finally, Federal claims that the privilege logs Mafcote submitted following the May 12 order do not comply with the standards we set forth. Our May 12 order provided explicit instructions with respect to what Mafcote was to provide in its privilege logs and how it was to provide it. Specifically, we explained that Mafcote was to produce "privilege logs providing sufficient detail for the court and opposing counsel to evaluate its claims of privilege, in accordance with the standard set out in today's opinion." DN 66. We provided further guidance in our opinion, explaining that a sufficient privilege log would include:

> (a) The author(s) and all recipients (designated so as to be clear who is the sender and who the receiver), along with their capacities/roles/positions.
> (b) The document's date.
> (c) The purpose and subject matter of the document.
> (d) The nature of the [privilege] asserted, and why the particular document is believed to be privileged.

The privilege logs submitted by Mafcote following the entry of this order do not comply with the standards we set forth in our opinion and order. First, while the logs identify the senders and recipients of letters, they do not provide such identification for e-mail messages. The logs also fail to identify the capacities, roles, or positions for the individuals named therein. Although designations such as "co-counsel" and "client representative" are offered for some entries, they are not available for all individuals named. The logs also fail to provide sufficient information to

assess *why* the information is believed to be privileged. The logs provide only limited information about the contents of the communications (e.g., "Discussion of claim") and note the type of privilege asserted (e.g., "Attorney-client privilege"). They do not provide information that would allow this court to assess whether the documents were properly withheld. *See, e.g.*, *Brubaker v. Encompass Prop. & Cas. Co.*, No. 07-1488, 2008 U.S. Dist. LEXIS 40133, at *2 (E.D. Mich. May 19, 2008) (noting that general descriptions such as "letter re claim" ; "analysis of claim"; and "report in anticipation of litigation" are insufficient to establish privilege).

Mafcote's attempts to justify its failings are unavailing. Mafcote claims that Federal could have ascertained the positions of "many, if not virtually all" of the individuals whose roles were not identified in the privilege logs by reviewing the *Brown* documents. Mafcote also includes a listing of individuals and their corresponding positions as an Exhibit to its Response. *See* Mafcote Response to Motion to Dismiss, Ex. 10. However, this does not change the fact that Mafcote did not provide the information this court ordered it to provide.

Furthermore, Mafcote argues that it has, in fact, stated why it believes particular documents identified in the log are privileged. However, blanket assertions of privilege coupled with vague labels do not provide sufficient information to assess the applicability of a given privilege. Mafcote offers nothing beyond a blanket assertion that it has, and always has, provided the necessary information in its privilege logs, but this is clearly not the case. Mafcote's failure to provide a sufficiently detailed privilege log for the *Brown* documents violated our May 12 discovery order.[7]

---

[7]Mafcote also did not provide supplemental privilege logs addressing information withheld in relation to Interrogatory No. 13 and Request for Production No. 11. Our May 12 opinion directed Mafcote to supplement these privilege logs, although our May 12 order that accompanied the
continue...

Having determined that Mafcote violated our May 12 order in at least two respects, we must now determine whether the violations warrant dismissal. A court deciding a motion to dismiss for discovery violations considers four factors: (1) evidence of willfulness or bad faith; (2) prejudice to the adversary as a result of the failure to cooperate in discovery; (3) whether the violating party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions have already been imposed or ordered. *Phillips v. Cohen*, 400 F.3d 388, 402 (6th Cir. 2005) (citing *Bass v. Jostens, Inc.*, 71 F.3d 237, 241 (6th Cir. 1995)).

In our May 12 opinion denying Federal's motion to dismiss, we held that the third and fourth factors of this test weighed against dismissal because Mafcote had not been warned and no sanctions had yet been imposed. However, Mafcote has now been explicitly warned about the consequences of further violations by virtue of our May 12 opinion and order. Mafcote has also received financial sanctions as a result of its earlier conduct. Thus, based on Mafcote's continued failure to comply with its discovery obligations, the third and fourth factors of this test now tilt strongly in favor of dismissal.

We also found in our May 12 opinion that Federal had a strong argument with respect to the prejudice it had suffered because of Mafcote's violations. We held that Mafcote's conduct up

---

[7]...continue
opinion contained no such instruction. Mafcote did not supplement these logs within the deadline set by our opinion, but it has now provided additional information with respect to the subject matter of some of the documents withheld. Pl.'s Resp. to Def.'s Second Mot. to Dismiss, Ex. 9. However, the log it has submitted still does not comply with the guidelines set out in our opinion. For instance, the positions of the senders and recipients of the documents are not provided within the log, nor is it explicitly stated *why* such documents are believed to be privileged in addition to the blanket privilege asserted. Moreover, the information Mafcote provides along with its response appears only to reference Request for Production No. 11; there is no sign of the supplemental privilege log for Interrogatory No. 13. Mafcote argues that we gave these logs only "cursory" treatment in our earlier opinion, but this does not excuse its behavior. Even absent an explicit provision in a court order, Mafcote was under an obligation to provide sufficient privilege logs pursuant to Federal Rule of Civil Procedure 26(5)(A)(ii).

to that point had left Federal unable to rely on Mafcote to provide candid, accurate, and complete discovery responses. At the time, we held that this prejudice alone was not enough for Federal to prevail. However, the strength of this argument has not changed between then and now: based on Mafcote's disregard of this court's orders, Federal is still unable to rely on Mafcote to provide complete and accurate responses to its discovery requests. This factor, as it did in May, weighs in favor of dismissal.

The only question remaining is whether Mafcote's conduct evinces the bad faith or willfulness necessary to warrant dismissal. The answer is somewhat mixed. Some of the activity Federal cites as evidence of Mafcote's disregard of this court's order – such as its answer to Interrogatory No. 14 and its allegedly defective verification – are not sanctionable discovery violations, much less violations warranting dismissal. However, Mafcote's failure to provide the *Brown* settlement agreement and settlement-related documents despite Federal's prior request and this court's clear order to provide copies of all non-privileged *Brown* documents, as well as its continued failure to provide an adequate privilege log, can only be chalked up to a willful disregard of this court's discovery order. Although it has now complied somewhat with the order by providing the *Brown* settlement agreement with its response to Federal's motion for sanctions, Federal should not have to resort to a motion for sanctions in order to ensure Mafcote's compliance with a court order.

Willfulness may be found where there is a "conscious and intentional failure to comply with [a] court order," *Bass*, 71 F.3d at 241 (citing *Brookdale Mill, Inc. v. Rowley*, 218 F.2d 728, 729 (6th Cir. 1954)), or where a plaintiff's conduct demonstrates "reckless disregard for the effect of [its] conduct on [judicial] proceedings." *Schafer v. City of Defiance Police Dept.*, 529

F.3d 731, 737 (6th Cir. 2008) (citation omitted). Mafcote was duly warned and given more than adequate direction with respect to what it was to provide and when it was to provide it. It nonetheless disregarded this court's order and has offered no adequate justification as to why it did so. Its habit of blaming Federal for its own failure to comply with discovery rules does nothing to bolster its case. Mafcote has refused to follow this court's clear order in a timely fashion, despite an unequivocal warning about the consequences for failure to do so. Its violations warrant dismissal of this action, and Federal's motion to dismiss will be granted.

      A separate order will issue in accordance with this opinion.